UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMAR PARKER,

        Plaintiff,

vs.

CITY OF DETROIT;
DETROIT POLICE DEPARTMENT, a
municipal law enforcement agency;
CHRISTOPHER TOWNSEND,
individually and in his official capacity as
police officer for the Detroit Police
Department; JOHN DOE, individually and
in his official capacity as police officer for
the Detroit Police Department; JOHN
ROE, individually and in his official
capacity as police officer for the Detroit
Police Department,

    Jointly and severally,
        Defendants.

Case No:  16-cv-13036-GAD-SDD
Hon. Gershwin A. Drain
Mag. Stephanie Dawkins Davis

---

| SALVATORE PRESCOTT & PORTER, PLLC | CITY OF DETROIT LAW DEPT. |
|---|---|
| Sarah S. Prescott (P70510) | Gregory B. Paddison (P75963) |
| Attorneys for Plaintiff | Attorney for Defendant |
| 105 East Main Street | 2 Woodward Ave., Ste. 500 |
| Northville, MI 48167 | Detroit, MI 48226 |
| (248) 679-8711 | (313) 237-0435 |
| prescott@spplawyers.com | paddisong@detroitmi.gov |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' AMENDED MOTION TO DISMISS
IN LIEU OF AN ANSWER**

## <u>TABLE OF CONTENTS</u>

**CONTROLLING AUTHORITY**……………………………………..……..…..iii

**STATEMENT OF DISPUTED ISSUES PRESENTED**…..………………..……..v

**OVERVIEW**....……………………………………………..………………....1

**MATERIAL FACTS**………………………………………..…………….....2

**ARGUMENT**……..………………………………...……………………………6

    **I.**    **Plaintiff Pleads the Police Officers Acted Under Color of Law**………...5

    **II.**    **Plaintiff Pleads Municipal Liability**……..…………….…………..…10

        **A.**   **Plaintiff States a Claim Based on Failure to Train**……………..….12

        **B.**   **Plaintiff States a Claim Based on Decision-makers' Conduct**…….15

    **III.**   **The Court Properly Exercises Supplemental Jurisdiction**…………......16

    **IV.**  **Plaintiff Alternatively Seeks Leave to Amend**……………….…..……...19

**CONCLUSION**………………………………………………………....20

# <u>CONTROLLING AUTHORITY</u>

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678, 129 S.Ct. 1937 (2009)…………..……....……..……..6, 11, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 555, 127, S.Ct. 1955 (2007)…………..………....…..……..6, 10, 14

*Birgs v. City of Memphis,*
    626 F.Supp.2d 776, 778-779 (W.D. Tenn. 2010)…..………..……….…..…16

*Conley v. Gibson,*
    355 U.S. 41, 47, 78 S.Ct. 99 (1957)……....……………………………....…6, 10

*Dennis v. Sparks,*
    449 U.S. 24, 27-28, 101 S. Ct. 183 (1980)…………..……………..……....7-8

*Feliciano v. City of Cleveland,*
    988 F.2d 649, 656 (6th Cir. 1993)……..………..…………….….…..……15

*Hudson v. Maxey,*
    856 F. Supp. 1223 (E.D. Mich. 1994)…………….………………...…...9, 10

*Javid v. Scott,*
    913 F. Supp. 223, 229 (S.D.N.Y. 1996)…………….……………..……..…17

*Layne v. Sampley,*
    627 F.2d 12 (6th Cir. 1980)…………….……….……………..….…8, 9

*Leatherman v. Tarrant Cty Narcotics Intelligence and Coordination Unit,*
    507 U.S. 163, 168, 113 S.Ct. 1160 (1993)………….……………….….…10

*Memphis, Tennessee Area Local Postal Workers Union, AFL-CIO v. City of Memphis,* 361 F.3d 898, 903 (6th Cir. 2004)………….…….…..……....……7

*Plinton v. Cty of Summit,*
    540 F.3d 459, 464 (6th Cir. 2008)…………….……….……….…..….…14

*Potochney v. Doe,*
 No. 02 C 1484, 2002 WL 31628214 (N.D. Ill. Nov. 21, 2002)……..…..……14

*Rolen v. City of Cleveland,*
 No. 1:12 CV 1914, 2013 WL 12145960 (N.D. Ohio Aug. 7, 2013)…......13, 14

*Stengel v. Belcher,*
 522 F.2d 438, 440-441 (6th Cir. 1975)……..……..……………..…..…6, 8

*Thiel v. Baby Matters, LLC,*
 No. 11-15112, 2013 WL 5913394 (E.D. Mich. Oct. 31, 2013)………..…..…19

*Thomas v. City of Chattanooga,*
 398 F.3d 426, 429 (6th Cir. 2005)……………..……………......12-13, 15

**Rules**

Fed. R. Civ. P. 8……………………………………………………..…….6, 10

Fed. R. Civ. P. 15…………..………………………………………......…...1, 19

**Other Authorities**

42 U.S.C. § 1983……………………………………………..…4, 8, 12, 13, 16

28 U.S.C. § 1367(a)………………………………………..……………....16

## STATEMENT OF DISPUTED ISSUES PRESENTED

Defendants Detroit Police Department and City of Detroit raise the following disputed issues:

1. Whether Plaintiff adequately pleaded that the individual Defendants acted under the color of law?

> Plaintiff answers, "Yes."
> Defendants City of Detroit and Detroit Police Department answer, "No."

2. Whether Plaintiff pleads facts sufficient to support a claim against the City of Detroit under § 1983?

> Plaintiff answers, "Yes."
> Defendants City of Detroit and Detroit Police Department answer, "No."

3. Whether the Court should exercise supplemental jurisdiction over Plaintiff's state tort claims?

> Plaintiff answers, "Yes."
> Defendants Detroit Police Department and City of Detroit answer, "No."

4. Whether the Court should grant leave to amend if it finds that the current complaint fails to state a claim?

> Plaintiff answers, "Yes."
> Defendants Detroit Police Department and City of Detroit presumably answer, "No."

## OVERVIEW

Detroit police officer Jerold Blanding [Defendant Roe] riddled Plaintiff's car with more than a dozen bullets as Plaintiff fled for his life, striking Plaintiff and coming within inches of killing him.[1] (**Ex. A**, Complaint, ¶¶ 38-42). Plaintiff Demar Parker now sues the City of Detroit and the involved police officers for excessive use of deadly force in violation of the Fourth and Fourteenth Amendments, intentional infliction of emotional distress, and assault and battery.[2] (**Ex. A**, Complaint). Defendants move to dismiss Plaintiff's claims. The Court should deny the motion. Plaintiff states a claim and establishes both color of law and municipal liability. In the alternative, pursuant to Fed. R. Civ. P. 15, Plaintiff asks the Court for leave to file the proposed Second Amended Complaint,[3] attached as **Exhibit B**.

---

[1] It is unknown whether the other police Defendants also fired shots at Plaintiff's car.

[2] Plaintiff relies in this response on the original complaint filed. As of this drafting, the parties have stipulated to an amendment that identifies Doe (Officer Marcus Ways) and Roe (Officer Jerold Blanding) and dismisses the Detroit Police Department, but does not otherwise substantively change the allegations. The stipulation and First Amended Complaint reflecting the Defendants' identity has been filed, but as of December 8, 2016, the Court had not signed the order.

[3] On August 22, 2016, Plaintiff filed his original Complaint. (Dckt No. 1, PageID 1). Plaintiff did not know two of the police Defendants' names so he sued them pseudonymously as Defendants "John Doe" and "John Roe." After learning their identities, the parties stipulated to a First Amended Complaint identifying by name Defendants Roe and Doe and dismissing the Detroit Police Department. On December 7, 2016, the parties filed the stipulation and First Amended Complaint, but as of this drafting, the Court has not yet entered it. In anticipation that the Court will enter the First Amended Complaint prior to consideration of this response, Plaintiff identifies the attached complaint as the *Second* Amended Complaint.

## **MATERIAL FACTS**

On the evening of August 14, 2015, Plaintiff arrived at his ex-girlfriend's home in Detroit, at which Plaintiff's child resided. (**Ex. A,** Original Complaint, ¶14). Upon approaching the home, Plaintiff observed through a window his then four-year-old daughter being held by an approximately ten-year-old boy as the boy simulated sex on Plaintiff's daughter. (*Id*. at ¶15). The boy's mother is Plaintiff's ex-girlfriend; the boy's father is Defendant Christopher Townson, a Detroit police officer.[4] (*Id*. at ¶16).

Witnessing the boy assault his young daughter upset Plaintiff. (**Ex. A,** Complaint, ¶17). Plaintiff and his ex-girlfriend argued through the door as Plaintiff pleaded with his ex-girlfriend to separate the children and allow him to enter. (*Id*. at ¶¶17-18). Plaintiff's ex-girlfriend refused Plaintiff entry. (*Id*. at 17). To get help, Plaintiff called his mother and contacted the ex-girlfriend's father (the child's grandfather), hoping that, if his ex-girlfriend would not allow him into the home, she would allow someone that she trusted to enter. (*Id*. at ¶¶19-20). Eventually, the child's grandfather arrived. (*Id*. at ¶21). Upon his arrival, Plaintiff stepped well back

---

[4] Defendant Christopher Townson's last name is incorrectly stated "Townsend" in the original complaint. The error is corrected in the First Amended Complaint. Except where quoting the original Complaint, Defendant Townson is referred to herein by his correct last name.

from the home so that the grandfather could enter without his ex-wife fearing that Plaintiff would rush into the home. (*Id*. at 22).

At some point, Plaintiff's ex-girlfriend summoned the boy's father, Detroit police officer Defendant Townson. (**Ex. A,** Complaint, ¶23). Upon information and belief, the ex-girlfriend also summoned the Detroit Police Department. (*Id*.). Shortly after 11:00 p.m., Defendant Townson arrived. (*Id*. at ¶24). Plaintiff, who was unarmed, was outside the residence. (*Id*. at ¶27). Upon arrival, Officer Townson approached Plaintiff aggressively, flashed his service weapon at Plaintiff, and asked Plaintiff questions such as, "What's your problem with my son?" (*Id*. at ¶¶28-29). Shortly thereafter, two other armed Detroit police officers, Marcus Ways (Defendant Doe) and Jerold Blanding (Defendant Roe), arrived. (*Id*. at ¶¶30). As the three police officers closed in on Plaintiff, Plaintiff, fearing they were going to harm him, evaded the officers and stepped into the bright street lights to remain visible to witnesses. (*Id*. at ¶¶32-33). Plaintiff then ran to his vehicle and pulled away. (*Id*. at ¶¶34-35).

Fearing for his safety, Plaintiff fled the scene but was travelling in the opposite direction of his home. (**Ex. A,** Complaint, ¶36). Rather than execute a three-point turn in front of the officers, Plaintiff drove for several blocks, clear of the officers' immediate ability to harm him, and then turned around. (*Id*. at ¶36). As Plaintiff proceeded back down the street toward his home, Officer Ways stepped into the middle of the street with his service weapon drawn. (*Id*. at ¶37). Officer Blanding,

3

who was standing on the driver's side of the street, raised his firearm. (*Id*. at ¶38). As Plaintiff drove past, Officer Blanding deployed deadly force and fired repeatedly at Plaintiff's car. (*Id*. at ¶39). It is unknown whether Officers Ways or Townson discharged their weapons. More than 15 bullets struck Plaintiff's car, including one shot that entered directly through the driver's side window of Plaintiff's car. (*Id*. at ¶¶40-41). Plaintiff tried to duck down to evade the shots. (*Id*. at ¶39). However, the shots, which were aimed at and intended to kill Plaintiff, struck their target, and Plaintiff was shot in the leg. (*Id*. at ¶¶41-42). Miraculously, Plaintiff survived the assault. (*Id*. at ¶46). Once Plaintiff was safe, he pulled over and called for help. (*Id*. at ¶44).

Neither Blanding nor any of the involved officers possessed justification to use deadly force. Plaintiff was not charged with any illegal conduct, he was lawfully standing on a sidewalk when the police officers arrived. (**Ex. A,** Complaint, ¶45). Plaintiff was unarmed and possessed no contraband, and his only intent was to stop an assault on his child. (*Id*.). Yet, three Detroit police officers intimidated Plaintiff and brandished their weapons, at least one of which unleashed a hail of bullets intended to kill Plaintiff in an unjustified use of deadly force. (*Id*. at ¶¶37-42, 44-47). Plaintiff now seeks recourse under 42 U.S.C. §1983 and state tort law for assault and battery and intentional infliction of emotional distress.

4

## ARGUMENT

### I.   Plaintiff Pleads the Police Officers Acted Under Color of Law

Plaintiff properly pleads that the police Defendants acted under color of law.

The Complaint alleges:

> "Police Officers Christopher Townsend [sic], Roe [Jerold Blanding] and Doe [Marcus Ways] *are employed by Defendant City of Detroit* …" (**Ex. A**, Complaint, ¶8);

> "All three individuals were *agents acting in the course of their employment by Defendant Detroit Police Department* at all times in question." (*Id*. at ¶10);

> During the dispute, "on information and belief, the mother of the child*, Plaintiff's ex-girlfriend, summoned Defendant Detroit Police Department* and in particular, Defendant Townsend [sic], to her home as well." (*Id*. at ¶23);

> *Defendant Townsend flashed his service weapon visible* at Plaintiff in an overt threat of violence. (*Id*. at ¶29).

> "In short order *Defendants Doe [Marcus Ways] and Roe [Jerold Blanding] arrived on the scene*, also armed." (*Id*. at ¶30);

> "[A]s Plaintiff returned down [the street] … Defendant Doe [Marcus Ways] stepped into the middle of the street … *with his service weapon drawn*." (*Id*. at ¶37);

> "As Plaintiff drove, *Defendant Roe [Jerold Blanding] deployed deadly force*, firing his handgun wildly and repeatedly at Plaintiff's car." (*Id*. at ¶39);

> "The *acts of the police Defendants complained of were under color of state law* and *undertaken in concert* among the named police Defendants." (*Id*. at ¶49);

Subject to a liberal pleading standard, Plaintiff's burden to state a claim is not

an onerous one. It requires only "'a short and plain statement of the claim showing

that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957))*;* Fed. R. Civ. P. 8(a). Here, Plaintiff satisfies this standard, pleading indicia of state action from which the court can reasonably conclude the police Defendants acted under color of law.

As an initial matter, the Court can reasonably infer that the police Defendants were not off-duty when they responded, but rather were dispatched to the scene after Plaintiff's ex-girlfriend summoned the Detroit Police Department. (**Ex. A**, Complaint, ¶¶23). *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Facts may be developed in discovery showing that the police Defendants were definitively acting in the course of their employment in responding to the dispute.

Second, even if the officers were off-duty, "[t]he fact that a police officer is on or off duty, or in or out of uniform is not controlling.*" See Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975). Even an off-duty police officer's possession and use of a service weapon is indicia of state action. *Id*. (considering in a "color of law" analysis that an off-duty police officer used police-issued mace during an assault and

6

that the officer carried a police-issued pistol pursuant to department regulations). Here, DPD police officers, acting in concert with one another and as DPD agents, brandished their service weapons and at least one of those police officers used it to shoot Plaintiff. (*Id*. at ¶¶10, 37-39, 49).

Third, a police officer's intervention in a third-party dispute pursuant to department regulations is indicia of state action. *See Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) (identifying "intervening in a dispute between third parties pursuant to a duty imposed by police department regulations" as a manifestation of official authority). In this case, upon information and belief, Plaintiff's ex-girlfriend summoned the Detroit Police Department. (**Ex. A**, Complaint, ¶23). In addition to Officer Townson, Officers Ways and Blanding arrived and intervened in the dispute. (*Id*. at ¶30). The dispute in which Ways and Blanding intervened was between Plaintiff and his ex-girlfriend; thus, Officers Ways and Blanding had no personal involvement in the matter. (*Id*. at ¶¶16, 18). It is, therefore, reasonable to infer that Officers Ways and Blanding intervened in a third-party dispute pursuant to DPD regulations.

Finally, as held by the U.S. Supreme Court, "Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S. Ct. 183

(1980). In this case, even if the Court determines that Officer Townson acted as a private party in responding to the dispute between Plaintiff and his ex-girlfriend regarding Townson's son, Officer Townson's concerted action with DPD officers Ways and Blanding to intimidate, assault and use deadly force against Plaintiff indicates state action. (**Ex. A**, Complaint, ¶49).

In sum, Plaintiff pleads the "color of law" element. Consistent with Sixth Circuit authority the Court should deny the motion to dismiss. In *Stengel v. Belcher*, the Sixth Circuit Court of Appeals considered the question whether there was sufficient evidence to support a jury's finding that an off-duty police officer who intervened in a third-party dispute and shot several persons was acting under color of state law. 522 F.2d 438 (1975). Finding that the evidence supported the jury's verdict, the Court considered, among other things, that the police officer used police-issued mace, carried his gun pursuant to police department regulations, and intervened in a dispute pursuant to a police duty. *Id*. at 441. The Court upheld the jury's color-of-law finding even though the officer was out of uniform, off-duty, and never identified himself as a police officer. *Id*. at 440-441.

In *Layne v. Sampley*, the Sixth Circuit Court of Appeals considered Plaintiff's appeal of a judgment notwithstanding the verdict in which the district court found insufficient evidence to support a finding that an off-duty police officer was acting under the color of state law in a § 1983 action. 627 F.2d 12 (6th Cir. 1980). In

reversing the district court, the Sixth Circuit relied in part on the facts that the officer had authority to carry the weapon by virtue of his status as a police officer and that plaintiff saw the officer with the weapon in the company of other police officers. *Id*. at *13.

As in the *Layne* and *Stengel* cases, Plaintiff here pleads indicia of state action. The police Defendants had service weapons which a jury could reasonably infer they had the authority to possess because they were police officers. (**Ex. A,** Complaint, ¶¶29, 37). In addition, Plaintiff encountered Officer Townson armed and in the company of other police officers (namely, Blanding and Ways), and Officers Blanding and Ways intervened in a third-party dispute after the DPD was summoned by Plaintiff's ex-girlfriend. (*Id*. at ¶¶23, 30).

Defendants cite to *Hudson v. Maxey*, 856 F. Supp. 1223 (E.D. Mich. 1994), in support of their argument that there was no state action in this case. The *Hudson* case is factually distinguishable. In *Hudson*, an off-duty police officer confronted and killed a woman's ex-boyfriend after the boyfriend broke into the home at which the police officer was staying and assaulted the woman. The *Hudson* defendant was the only police officer involved. In this case, there were *three* involved police officers, acting in concert with one another, two of whom had no personal stake in the argument between Plaintiff and his ex-girlfriend. No such facts existed in the *Hudson* case. Furthermore, even if Defendants can show by analogy to *Hudson* that

9

Defendant Townson's conduct was private in nature because the dispute involved his son, neither *Hudson* nor the Defendants address the intervention of the other two police officers who lacked a personal interest in the dispute and may have been dispatched to the scene after the DPD was summoned. Their intervention evidences state action.

Plaintiff pleads the color of law element. The Court should deny the motion to dismiss.

## II.     Plaintiff Pleads Municipal Liability

Plaintiff pleads the City of Detroit's liability. It is settled law that a municipal liability claim is subject to Rule 8's liberal pleading standard; the Court may not require heightened pleading. *See Leatherman v. Tarrant Cty Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160 (1993) (holding that a federal court may not apply a heightened pleading standard to civil rights cases alleging municipal liability). Rule 8 does "not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman,* 507 U.S.  at 168, *quoting Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957). While Plaintiff must do more than state conclusions or a formulaic recitation of the elements, neither Rule 8 nor *Twombly* and its progeny require detailed factual

allegations. *Ashcroft*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations' …").

Here, Plaintiff properly pleads the City's liability. The Complaint states:

"Academic study indicates that African-American men account for 40 percent of the unarmed people fatally shot by police. This makes African-American men seven times as likely as unarmed white men to die from police gunfire." (**Ex. A,** Complaint, ¶1);

"Police violence of this sort has been recently decried in our Supreme Court as reflecting a "shoot first, think later" mentality." (*Id*. at ¶2);

"In an incident of August 2015, Plaintiff was shot and came within inches of being killed, the latest victim of unlawful use of police force." (*Id*. at ¶4);

"… Plaintiff had no weapon." (*Id*. at ¶27);

"As Plaintiff drove, Defendant Roe [Jerold Blanding] deployed deadly force, firing his handgun wildly and repeatedly at Plaintiff's car," (*Id*. at ¶39);

"Plaintiff was shot in the leg." (*Id*. at ¶42).

"The acts of the individual police Defendants alleged in this Complaint represent official policy and custom of and are attributable to the Defendant City of Detroit and the Defendant Police Department for which such individuals worked." (*Id*. at ¶48);

"On information and belief, supervisory officials having final policymaking authority for the Defendant Police Department had knowledge of the conduct complained of." (*Id*. at ¶50);

"With regard to the constitutional deprivations alleged below, it would have been plainly obvious to a reasonable official and/or policymaker that the conduct described did deprive or would lead to deprivations of Plaintiff's constitutional rights." (*Id*. at ¶51);

"Upon information and belief, supervisory officials having final policymaking authority for the Defendant Police Department nevertheless agreed to, approved, and/or ratified the unconstitutional conduct alleged." (*Id.* at ¶52);

"Upon information and belief, the Defendant Police Department, by and through its supervisory officials having final policymaking authority, further failed to train. This failure to train led directly to the constitutional deprivations alleged below." (*Id.* at ¶53);

"Upon information and belief, the Defendant Police Department also failed to intervene in a custom of its employees violating individuals' constitutional rights. This failure led directly to the constitutional deprivations alleged below." (*Id.* at ¶54).

"Defendants promulgated and/or carried out the acts and omissions, official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard and deliberate indifference for the civil and constitutional rights, privileges and sensibilities of Plaintiff." (*Id.* at ¶60);

"As a direct and foreseeable consequence of Defendants' acts, omissions, policy decisions, failure to train, and failure to intervene in a custom of violating individuals' constitutional rights, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and thereby suffered physical and emotional injury." (*Id.* at ¶61).

"Plaintiff's emotional experience of the shooting was haunting – particularly for an African-American male already living with routine national coverage of unlawful uses of force up to and including choke holds, unprovoked shootings, and other violent, deadly conduct toward his protected class." (*Id.* at ¶47).

The Complaint pleads municipal liability.

## A.    Plaintiff States a Claim Based on Failure to Train

The inadequacy of police training may serve as the basis for § 1983 liability where the failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Thomas v. City of Chattanooga*, 398 F.3d 426,

429 (6th Cir. 2005) (identifying a policy of inadequate training or supervision as an avenue through which a plaintiff can establish municipal liability). Plaintiff pleads this theory.

In *Rolen v. City of Cleveland*, two police officers, one on-duty and the other off-duty, assaulted and killed a citizen suspected of stealing from the off-duty officer's home. No. 1:12 CV 1914, 2013 WL 12145960 (N.D. Ohio Aug. 7, 2013), **Ex. C.** On consideration whether to dismiss Plaintiff's § 1983 excessive force complaint for failure to state a claim, the Court concluded that the plaintiffs properly pleaded failure to train on the allegations that defendants' actions were due to either "a policy of inadequate training … or a custom of tolerance or acquiescence of federal rights violations.". *Id*. at *4. The Court reasoned, "Plaintiffs have alleged in detail the constitutional violations committed by City employees … and have clearly stated in their Complaint that these violations were caused by Defendant City of Cleveland's failure to adequately train its police officers in the application of probable cause to make arrests or the use of deadly force." *Id*. at *4. The *Rolen* Court also observed the quandary in which plaintiffs attempting to establish municipal liability often find themselves – that is, attempting to state a claim without access to relevant information:

> To properly plead a *Monell* claim, a plaintiff needs to point to a municipality's existing policy or lack thereof, or compile instances of similar events to the ones forming the basis for the claim. More often than not, this information will be very difficult for a plaintiff to find without discovery. Though

13

> *Twombly* and *Iqbal* did not heighten pleading requirements … the court, as other district courts have noted, is concerned that plaintiffs will find it difficult to make allegations rising to the level of plausibility without discovery, which possibly could turn away many meritorious claims. [*Id*. at *4 (internal citations omitted)].

*See also Potochney v. Doe*, No. 02 C 1484, 2002 WL 31628214, *3, (N.D. Ill. Nov. 21, 2002), **Ex. D,** determining that "The court will not dismiss [the plaintiffs'] failure to train claim against the Sheriff's Department inasmuch as plaintiffs do not have access to information that would allow them to plead that the failure to train applied to multiple employees."

As in *Rolen*, Plaintiff in this case detailed the constitutional violations committed by DPD's employees and clearly stated that the violations were directly caused by the DPD's failure to train. (**Ex. A,** Complaint, ¶¶48, 53). Furthermore, Plaintiff rightfully relies on the single constitutional violation detailed in his Complaint because Plaintiff's express allegations and the resulting reasonable inferences establish a national recurrence of unlawful and unprovoked police shootings of unarmed black men that presented an obvious need for police training, which the DPD failed to adequately provide. (**Ex. A,** Complaint, ¶¶ 1-2, 4, 47, 53). As the Sixth Circuit observed, "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Plinton v. Cty of Summit*, 540 F.3d 459, 464 (6th Cir. 2008).

14

### B.      Plaintiff States a Claim Based on Decision-makers' Conduct

Actions taken by officials with final decision-making authority establish municipal liability. *Thomas*, 398 F.3d at 429. "[I]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993). Plaintiff properly pleads ratification. Taken as true, Plaintiff's Complaint establishes that Plaintiff's ex-girlfriend summoned the Detroit Police Department; that the DPD's supervisory officials with final policymaking authority had knowledge of the use of deadly force; that Plaintiff was not engaged in any action that would provoke or justify the use of deadly force; that it was obvious to DPD officials that the officers violated Plaintiff's constitutional rights to be free of unlawful excessive force; that the DPD supervisory officials agreed to, approved and/or ratified the unlawful use of deadly force; that the officials failed to intervene; and that the City continues to employ the police officers. (**Ex. A**, Complaint, ¶¶8, 23, 45, 50-52, 54). These facts, considered collectively, establish ratification.

In sum, Plaintiff states a claim for municipal liability. Defendants' motion should be denied.

15

### III. The Court Properly Exercises Supplemental Jurisdiction

"[I]n any civil action of which the district courts shall have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy…" 28 U.S.C. § 1367(a). Here, the Court properly exercises supplemental jurisdiction.

Defendants wrongly assert that Plaintiff's state tort claims "predominate" over Plaintiff's constitutional claims. This case at its core is about the Defendants' deprivation of Plaintiff's constitutional rights to be free of excessive use of police force, guaranteed under the Fourth and Fourteenth Amendments. Plaintiff's state law claims arise from the same acts and omissions that comprise Defendants' constitutional violations. This is precisely the circumstance in which a court should exercise supplemental jurisdiction as the claims are so related that they comprise the same case and controversy. 28 U.S.C. § 1367(a).

In *Birgs v. City of Memphis*, the district court considered whether to exercise supplemental jurisdiction in a § 1983 excessive force case. 686 F.Supp.2d 776 (W.D. Tenn. 2010). Plaintiff's state law claims included, among other things, assault and battery and intentional infliction of emotional distress (the same claims Plaintiff in this case is asserting). *Id*. at 778. Finding that supplemental jurisdiction was appropriate, the Court observed that "[a]ll of Plaintiff's claims derive from the same

16

'common nucleus of operative fact'" and reasoned that declining jurisdiction "would waste resources of the parties and the state and the federal court." *Id*. at 779.

Similarly, in *Javid v. Scott*, the district court considered in a § 1983 excessive force action whether to retain supplemental jurisdiction over Plaintiff's state tort claims for assault and battery and wrongful death. 913 F. Supp. 223, 229 (S.D.N.Y. 1996). Observing that "[t]here can be no dispute that plaintiff's state and federal claims against defendant Scott arise out of a common nucleus of operative fact," the judge retained supplemental jurisdiction over the state law tort claims. *Id*. at 229.

Likewise, the Court should retain supplemental jurisdiction in this case. There is no dispute between the parties that Plaintiff's federal and state law claims arise from the same set of facts. *See* Defendants' admission at Dckt No. 10-2, PageID 135 (stating, "Even where, ashere [sic], the federal and state claims arise out of the same factual background …"). Moreover, proceeding with Plaintiff's state law claims will not substantially expand the suit beyond that necessary and relevant to the federal claim, whereas requiring Plaintiff to litigate related claims in two separate courts will result in the unnecessary duplication of litigation (which Defendants admit), the unnecessary expenditure of resources, and the potential for inconsistent factual findings. (*See* Defendants' admission at Dckt No. 10-2, PageID 137 (stating, "[T]here will be some duplication of effort required by Plaintiff and Defendants if Plaintiff decides to purse the state claims in state court …").

Defendants' argument that exercising supplemental jurisdiction will require introduction of inapplicable or inconsistent evidence is unfounded and inconsistent with Defendants' admissions that the federal and state claims arise out of the same factual background and separate actions will result in at least some duplicated litigation. (Dckt No. 10-2, PageID 135, 137). Defendants offer no explanation why a case presenting several legal claims that arise from a singular nucleus of facts will require the introduction of "inapplicable or inconsistent" evidence such that the Court should decline supplemental jurisdiction.

Finally, Defendants' concerns of jury confusion, prolonged pretrial practice, complex jury instructions and inconsistent verdicts are red herrings. The jury will determine a single set of facts from which it will render verdicts on Plaintiff's legal claims, none of which are complex or novel. Defendants' concerns are resolved with well-crafted jury instructions regarding elements, defenses and available damages, which juries routinely receive and apply. In the absence of a showing why the issues in this case are so complex or disparate that a jury should be presumed unable to decide them without suffering substantial confusion and incapacity to understand and apply jury instructions, Defendants' motion should be denied. In addition, Defendants' argument regarding the differing elements for governmental immunity is premature as the police Defendants have not asserted immunity to any claims.

18

## IV.    Plaintiff Alternatively Seeks Leave to Amend

Plaintiff states a claim and asks the Court to deny Defendants' motion to dismiss. In the alternative, Plaintiff requests leave to file the attached proposed Second Amended Complaint. (**Ex. B**). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Here, Plaintiff seeks recourse for a severe abuse of police power that resulted in him being shot and nearly killed. Considering the national recurrence of controversial police shootings and Detroit's historical pattern and practice of using unlawful excessive and often deadly force (as laid out in the Second Amended Complaint), the constitutional deprivations at issue are significant to Plaintiff, to the Detroit community, and to the general public. Defendants are trying to stop his case before Plaintiff even gets a chance at discovery. Justice demands that Plaintiff have an opportunity to amend his Complaint if the Court determines that the current complaint is deficient. Notably, an amendment will not prejudice Defendants. This case is early in litigation, the parties have not started discovery, and the proposed amendment does not assert new legal claims. *See, e.g., Thiel v. Baby Matters*, LLC, No. 11-15112, 2013 WL 5913394, *4 (E.D. Mich. Oct. 31, 2013) (granting Plaintiffs leave to file a Second Amended Complaint, reasoning that Defendants will not be prejudiced), **Ex. E.**

## <u>CONCLUSION</u>

Plaintiff asks the Court to deny Defendants' motion to dismiss or, in the alternative, to grant Plaintiff leave to file the proposed Second Amended Complaint.

Respectfully submitted,
SALVATORE PRESCOTT &
PORTER, PLLC

/s/ Sarah S. Prescott
Sarah S. Prescott (P70510)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
Dated: December 9, 2016          prescott@spplawyers.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

/s/ Tara L. Lank
Tara L. Lank, Legal Secretary

20