UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMAR PARKER,

    Plaintiff,

vs.

CITY OF DETROIT, a municipality, et al.,

Jointly and severally,

    Defendants.

Case No: 16-cv-13036-GAD-SDD
Hon. Gershwin A. Drain
Mag. Stephanie Dawkins Davis

| SALVATORE PRESCOTT & PORTER, PLLC<br>Sarah S. Prescott (P70510)<br>Nakisha N. Chaney (P65066)<br>Attorneys for Plaintiff<br>105 East Main Street<br>Northville, MI 48167<br>(248) 679-8711<br>prescott@spplawyers.com<br>chaney@spplawyers.com | CITY OF DETROIT LAW DEPT.<br>Gregory B. Paddison (P75963)<br>Attorney for Defendants<br>2 Woodward Ave., Ste. 500<br>Detroit, MI 48226<br>(313) 237-0435<br>paddisong@detroitmi.gov |
|---|---|

## PLAINTIFF'S MOTION TO COMPEL WRITTEN DISCOVERY RESPONSES

NOW COMES Plaintiff, DEMAR PARKER, by and through his attorneys, SALVATORE PRESCOTT & PORTER, PLLC, and for his Motion to Compel Written Discovery Responses, states as follows:

1. This is an excessive force civil rights case involving the shooting of the unarmed Plaintiff.

2. Three individual police officers are personally named as being involved in the matter: Townson, Blanding and Ways.

3. Plaintiff promptly requested discovery upon filing this case, including basic items such as the training, personnel and discipline files of the named Defendants and also materials relating to the investigation.

4. Defendant has not fully answered the discovery, so this motion calls on the Court to compel production.

5. The attached brief fully identifies the discovery, Defendants' inadequate or missing responses and the reasons for compelling production.

6. The items in dispute are: Interrogatories 1-5 and 7-11, and Requests to Produce 1-2, 4-8, 11-18, 21-22, and 24-27.

7. The operative/controlling rules of procedure are Fed. R. Civ. P. 33, 34, and 37.

8. Plaintiff made many contacts attempting to resolve this matter, but was unable to achieve compliance with the rules cited above.

WHEREFORE, Plaintiff respectfully moves the Court to compel production on Interrogatories 1-5 and 7-11, and Requests to Produce 1-2, 4-8, 11-18, 21-22, and 24-27.

|  |  |
|---|---|
|  | Respectfully submitted,<br>SALVATORE PRESCOTT &<br>PORTER, PLLC<br><br>/s/ Sarah S. Prescott<br>Sarah S. Prescott (P70510)<br>Attorneys for Plaintiff<br>105 East Main Street<br>Northville, MI 48167<br>(248) 679-8711 |
| Dated: July 28, 2017 | prescott@spplawyers.com |

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DEMAR PARKER,

    Plaintiff,

vs.

CITY OF DETROIT, a municipality, et al.,

Jointly and severally,

    Defendants.

Case No: 16-cv-13036-GAD-SDD
Hon. Gershwin A. Drain
Mag. Stephanie Dawkins Davis

---

| SALVATORE PRESCOTT & PORTER, PLLC | CITY OF DETROIT LAW DEPT. |
|---|---|
| Sarah S. Prescott (P70510) | Gregory B. Paddison (P75963) |
| Nakisha N. Chaney (P65066) | Attorney for Defendants |
| Attorneys for Plaintiff | 2 Woodward Ave., Ste. 500 |
| 105 East Main Street | Detroit, MI 48226 |
| Northville, MI 48167 | (313) 237-0435 |
| (248) 679-8711 | paddisong@detroitmi.gov |
| prescott@spplawyers.com | |
| chaney@spplawyers.com | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL WRITTEN DISCOVERY RESPONSES

NOW COMES Plaintiff, DEMAR PARKER, by and through his attorneys, SALVATORE PRESCOTT & PORTER, PLLC, and for his Brief in Support of his Motion to Compel Written Discovery Responses, states as follows:

**I.      Background Facts**

Plaintiff is an African-American man. The Defendant police officers, Christopher Townson, Jerold Blanding and Marcus Ways, are employed by Defendant City of Detroit and are sued jointly and severally in their official and personal capacities. All three individuals were agents acting in the course of their employment by Defendant City of Detroit at all times in question. *See* Second Am. Comp. ¶ 36. Specifically, this matter involves excessive force applied to Plaintiff on the evening of August 14, 2015.

On that date, Plaintiff arrived at his child and ex-girlfriend's home. *Id.* ¶ 40. Plaintiff observed through a window his then four year-old daughter being held by an approximately ten year-old boy, as the boy simulated sex on her, "spooning" her under a blanket. *Id.* ¶ 41. Plaintiff insisted on his daughter's removal from the home, but the child's mother refused. *Id.* ¶¶ 42-49. The boy's father is Defendant Townson. Townson arrived armed, with the armed back-up support of Defendant Ways and Defendant Blanding. *Id.* ¶¶ 55, 60. Defendants attempted to drive Plaintiff away from the home, and when he left, got his car, and tried to take down their license plates, Blanding shot Plaintiff in the leg and riddled his car with bullets, firing 16 times. *Id.* ¶¶ 67-74. Plaintiff was never charged with any crime based on the interaction, yet Defendants deployed deadly force, shooting to kill Plaintiff through his car window. *Id.*

Defendant Blanding, in particular, has a very dark history with the Detroit Police Department ("DPD"). He recently shot and killed a nineteen year-old, unarmed boy. He has been sued repeatedly for excessive force, and on information and belief, the Defendant City has paid over $1,000,000 in cases involving him as a Defendant. He also likes to shoot at animals with his service weapon, and goes by the nickname "FATALFORCE." *See* Second Am. Compl. ¶¶ 13-16.

This case involves State law intentional torts such as assault and battery and intentional infliction of emotional distress as to the individual Defendants. Under 42 U.S.C. § 1983, it also asserts that Defendant, City of Detroit, is permitting "an ongoing failure to adequately train, supervise, investigate and discipline officers," and it was "on clear notice of recurring problems with excessive force" where the "need to provide continued training to officers in the use of excessive force is plainly obvious." *Id.* ¶¶ 86, 88, 87. The Second Amended Complaint alleges that this is the official policy and custom of, and is attributable to, the Defendant City and the Detroit Police Department, among other reasons because supervisory officials having final policymaking authority for the Defendant City knew, or should have known, of the conduct complained of, and by action and inaction "agreed to, approved, and/or ratified the unconstitutional conduct alleged. *See generally id.* ¶¶ 86-103.

## II. Procedural History

Plaintiff served the discovery at issue on May 11, 2017. Plaintiff offered Defendants every opportunity to answer fully, including extending the date to answer. Defendants answered, in part, on June 14, 2017. The answers did not include any details from officer Townson, who was experiencing health problems. *See* **Exh. A**, Disputed Discovery Answers.

Following receipt of the answers, Plaintiff's counsel attempted at least five contacts with Defense counsel to seek supplementation of discovery and correction of incomplete answers. *See* **Exh. B**, Emails. Recently, Defendants assured that the discovery was coming, and Plaintiffs withheld filing this motion, in reliance on that assurance.

## III. Legal Standard

Fed. R. Civ. P. 26(b)(1) provides that, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The Rule was recently amended; however, the Advisory Committee Notes

explicitly recognize the amendment simply "restor[ed] the proportionality calculation to Rule 26(b)(1)" that had been muddied in 1993 Rule amendments. The Rule change was not intended to import a new method of affording discovery. Moreover, the notes explain that "the change does not place on the party seeking discovery the burden of addressing all proportionality considerations."

With regard to those considerations, since at least the 1983 amendments to the Federal Rules, the Advisory Committee has recognized the unique public role played by private attorneys general (plaintiffs) enforcing civil rights statutes. The notes thus "recognize[d] that many cases in the public policy spheres, such as employment practices, free speech, and other matters, may have importance beyond the monetary amount involved." Fed. R. Civ. P. 26(b), Advisory Committee Notes on 1983 amendments. Upon recent adoption of the amendment to the discovery standard cited above, the Rules Committee felt it was important enough to emphasize this consideration, so much so that it repeated the above text in the new comments to the latest amendment, reiterating the importance of social justice causes. *See also Irwin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987).

The amended Rule's direction to consider the parties' relative access to relevant information requires the Court to focus on what often is called "information asymmetry." As the Rules Committee explained:

> One party — often an individual plaintiff — may have very little discoverable information. The other party may have vast amounts of

5

information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, ***and properly so***.

Fed. R. Civ. P. 26, Advisory Committee Notes 2015 (emphasis added).

The Sixth Circuit has made clear that a plaintiff in a civil rights suit must have leeway to discover and introduce evidence of discrimination that may prove his case indirectly and circumstantially. *Robinson v. Runyan*, 149 F.3d 507, 513 (6th Cir. 1998).

As this Court is well aware, it is entitled to compel production of materials, per Fed. R. Civ. P. 33, 34 and 37.

## IV. Discovery at Issue

The disputed discovery at issue is attached as **Exhibit A**. The issues are as follows:

> **Interrogatory 1** – This interrogatory seeks information on who responded to the scene of the events at issue from DPD. Rather than answer, Defendant claims that it has provided "all materials" it has. This does not supply the details requested even as to people whose names can be found in what has been produced, such as rank and location of assignment, etc. This also is not correct, as seen below. "All materials" have not been provided, as seen from the face of the remaining discovery answers.
>
> **Interrogatory 2** – This interrogatory seeks contact information for un-represented individual Defendants, to the extent the Defendant City will not be representing them. The City provided a provisional response relating to a

pending appeal of a decision on representation for the individual named Defendants, but it has not updated the discovery. Plaintiff requests supplementation.

**Interrogatory 3** - Interrogatory 3 seeks information about the duty status of the officers involved, in that one of the defenses in this case is that the officers were not on duty when they attacked the Plaintiff. Answers are given for two of the individual Defendants, but not for Defendant Townson.

**Interrogatories 4 and 5** ask for training/education and work experience for each named Defendant. Answers are given for two of the individual Defendants, but not for Defendant Townson.

**Interrogatory 7** – This interrogatory goes to the individual Defendants' history of excessive or undue force, asking for prior instances of investigation for claims of such misconduct. Defendants object, and do not state whether they are withholding materials. On the contrary, they say they have "requested" a responsive file to answer. Documents produced to date reflect that Townson, for example, has 40 separate citizen complaints against him— many for excessive force. But after numerous attempts to resolve this matter without a motion, the "requested" files have never been produced. The history of excessive force on the part of these specific, named Defendants is clearly discoverable, and the lack of production has delayed the taking of depositions.

**Interrogatory 8** — This interrogatory seeks the names and contact information for potential witnesses, specifically those who have information on the complaints against the individual Defendant police officers. In other

7

words, the request is for the names of people who may have details about prior instances of misconduct by the named, individual Defendants. As set forth above, there are many citizen complaints against some of these Defendants. Yet Defendants do not answer, and refer (with a boilerplate, generic response) that this information may be in the personnel file. Plaintiffs do not see such information in the file they have received, and Plaintiffs *do not even have* the personnel file of Defendant Blanding or Defendant Ways. Only the file of Defendant Townson has been produced to date, meaning that even if the relevant information were able to be gleaned in the personnel files, Plaintiff does not have them.

**Interrogatory 9** – This interrogatory asks whether the individual named Defendants were on duty at times relevant. Defendant Townson has not answered.

**Interrogatory 10** – This interrogatory asks about times the Defendants have been sued for excessive force or misuse of authority. Defendant Townson has not answered at all, and the other two named Defendants have not made reasonable efforts to answer, refusing to provide names of parties, court case numbers, or how the matter was resolved. On information and belief, very significant money has been paid in prior suits against Defendant Blanding for excessive force. He needs to give a complete answer.

**Interrogatory 11** – This interrogatory asks when the Defendants have been disciplined. Defendant Townson has not answered, and for the other/remaining named Defendants, the answers reference a file that has been "requested" within DPD, but has not yet been turned over. In short, no

responsive information has been provided.

**Requests to Produce 1 and 18** — Request 1 asks for investigatory files around the shooting at issue. Request 18 specifies a request for all photos, videos and other tangible evidence. In response to both Requests, Defendants say they have provided the same, but the file produced to date contains information making 100% clear that *not* all of the file has been turned over. For example, the police who interviewed Plaintiff refer to video of the scene from a passing bus in an interview. No video has been produced. The same interviewers refer to witness notes, which have not been produced. Third, there is no video of various witness interviews, such as the interviews of the named, individual police Defendants—although the reports indicate their interviews were recorded.

**Request 2** – Defendants both object to this Request and say that the materials have been turned over. Fed. R. Civ. P. 34(b)(2)(C) requires clarification on whether items are withheld.

**Request 4** – This request seeks policies and procedure manuals applicable to the Defendants. Defendants claim this is broad, vague and irrelevant. This very standard request permits Plaintiff to evaluate the training, or lack thereof, which is at issue in this matter and forms a basis for the claims against DPD.

**Request 5** – This request seeks organizational charts applicable to the Defendants. Defendants claim this is irrelevant. This very standard request permits Plaintiff to evaluate the supervisorial chain, which is directly relevant to the claims against the City of a breakdown in supervision. Further, the

9

answer—i.e., that supervision is irrelevant because the Defendants were "off duty"—hinges on the Court simply adopting a fact ("off duty status"), which is disputed and at issue. It is a bootstrap and not a basis for denying discovery.

**Request 6** – This request seeks DPD policies on seizing individuals. Defendants have answered that they are working on finding this, but they have not produced the materials to date after many attempts to resolve this matter.

**Request 7 and 27** – Request 7 seeks DPD policies on use of force. Request 27 seeks policies and procedures on identified items, including the duty to investigate, the role of investigators, reports and completing reports, use of force and excessive force. Defendants have answered that they are working on finding this, but they have not produced the materials to date after many attempts to resolve this matter.

**Request 8** – This request seeks forensics on the incident at issue. Defendants have answered that they have produced this, but after many requests, Plaintiff does not, in fact, have such a thing. If there are no forensics, then Plaintiff simply requires that to be clarified.

**Request 11** – This request seeks training requirements for the named Defendants. The request is not for the training materials themselves, but for materials showing *what training is required*, for example, if there are standards or outlines of what training is scheduled at what intervals, etc. Defendants have claimed this is not relevant. However, the Second Amended Complaint alleges a lack of training directly as a vehicle for liability against Defendant, City of Detroit. Whether the Defendants were properly trained is

10

a specific fact in dispute, based on the denials on the answer to the Second Amended Complaint. *See* Second Am. Compl. ¶¶ 86-103 (alleging failure to train) and Defendant City of Detroit's Answer to Second Am. Comp. ¶¶ 86-103 (disputing).

**Request 12** – This request seeks a subset of training materials at issue in this case, namely training on constitutional rights of witnesses and suspects. Defendants do not object, but claim they will produce the same. That has not happened, despite many efforts to resolve this matter.

**Request 13** – This request seeks proof of attendance at training for each of the named, individual Defendants. Defendants do not object, but refer to personnel files, which supposedly contain this information. However, Plaintiff does not have the personnel file of Defendant Blanding or Defendant Ways.

**Request 14** – This request seeks job descriptions for the named, individual Defendants. Defendants object, claiming this request is broad and vague. Either a job description exists or it does not. If not, that can be clarified. If one exists, Plaintiff may use it to assess any claim that the Defendants were not acting in the course and scope of their duty at times relevant.

**Request 15-17 and Request 24** – Request 15 seeks complaints about the Defendants, and Request 24 seeks use of force reports about them. Request 16 seeks discipline for the same. Request 17 seeks investigatory files as to each such complaint. In response to each Request, Defendants roll out a boilerplate list of objections, then suggest that the information is in the personnel files (again, 2 of 3 of which have not been produced) and something

11

called the MAS files (0 of 3 of which have been produced). Plaintiff needs the materials that exist, and is also entitled to a straight answer about items possibly being withheld based on objections. *See* Fed. R. Civ. P. 34(b)(2)(C). Notably, the records produced to date 100% confirm that there have been prior complaints—many of them.

**Request 21** – This request seeks log books, recordkeeping, records, rolls, and timekeeping entries that DPD maintains to show where the named Defendants were assigned immediately before, on, and after the date at issue (four days' worth of information). On information and belief, the DPD maintains logs of car and weapon (gun and taser) assignments, etc. In response to this Request, Defendant, City of Detroit, answered that it had produced the same, but Plaintiff does not have these items. Plaintiff has attempted to make this clear repeatedly, but Defendant has not supplemented its answers.

**Request 22** – This request seeks recordings, such as 911 calls. Defendants have produced a dispatch tape which consists of dispatchers and officers talking to each other. It has *not*, however, produced 911 calls that the dispatchers reference in their taped exchanges (e.g., a dispatcher states DPD has had a call from a woman about shots fired). Plaintiff requires all 911 recordings, as well as any tape of the officers on the scene.

**Request 25** – This Request seeks reports of the use of service weapons (guns) at the Defendant officers' precincts the day before, of, and day after the event at issue (3 days total). Defendants are resisting, claiming this is "overly broad" and not relevant. The purpose is to determine if proper reporting procedures were used in reporting the discharge of a weapon at the Plaintiff.

The use of force, without proper reporting, and with no consequences, may be used to show ratification of the wrongful conduct at issue.

**Request 26** – This Request seeks policies on how and when various incidents are to be reported, such as the rules and procedures for reporting use of force, and/or use of a service weapon.  Defendants claim this has been "requested," but have not actually produced these items after many informal requests.

## Relief Requested

Plaintiff, for the foregoing reasons, respectfully moves the Court to compel production on Interrogatories 1-5 and 7-11 and Requests to Produce 1-2, 4-8, 11-18, 21-22, and 24-27.

                                              Respectfully submitted,
                                              SALVATORE PRESCOTT &
                                              PORTER, PLLC

                                              /s/ Sarah S. Prescott
                                            Sarah S. Prescott (P70510)
                                            Attorneys for Plaintiff
                                            105 East Main Street
                                            Northville, MI 48167
                                            (248) 679-8711
Dated: July 28, 2017                prescott@spplawyers.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2017, I electronically filed the foregoing document, Plaintiff's Motion to Compel Written Discovery Responses and Brief in Support, and this Certificate of Service with the Clerk of the Court using the Court's ECF system, which will send notification of such filing to counsel of record.

Dated: July 28, 2017                     /s/ Tara L. Lank
                                                        Tara L. Lank, Legal Secretary