UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMAR PARKER,

        Plaintiff,

                              Case No.: 16-13036

v.                               Honorable Gershwin A. Drain

CITY OF DETROIT, *et al.*,

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [#46]

### I. INTRODUCTION

On May 31, 2017, Plaintiff Demar Parker filed a Second Amended Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants Christopher Townson, Marcus Ways, Jerold Blanding and the City of Detroit violated his Fourth and Fourteenth Amendment rights, as well as state law claims of assault and battery and intentional infliction of emotional distress during an encounter on August 14, 2015.

Presently before the Court is the Defendants' Motion for Partial Summary Judgment, filed on August 16, 2017. In their present motion, Defendants, who are all employed as police officers for the City, argue that they were not acting under

color of state law during the incident on August 14, 2015; therefore none of the Defendants can be liable under section 1983. They further assert that there are no genuine issues of material fact as to whether Defendants Townson and Ways committed assault and battery or intentional inflectional of emotional distress, thus these Defendants are entitled to judgment in their favor on all of Plaintiff's claims.

Plaintiff filed a Response in Opposition on March 5, 2018, and Defendants filed a Reply Brief on March 20, 2018. A hearing on this matter was held on April 2, 2018. For the reasons that follow, the Court will deny the Defendants' Motion for Partial Summary Judgment.

## II. FACTUAL BACKGROUND

On August 14, 2015, Plaintiff arrived at the home of his four-year old daughter and his ex-girlfriend, Jasmine Sanchez. As Plaintiff approached the house, he observed his daughter and her half-brother "spooning" while watching television. The boy was Sanchez's and Defendant Townson's son. Plaintiff became upset by what he had just witnessed, particularly when he realized that Sanchez was sleeping rather than supervising the children. He pleaded with her to separate the children and to let him into the home, but Sanchez denied Plaintiff entry.

Plaintiff was very concerned for his daughter's well-being. He requested

2

entry into the home and to take his daughter with him to his home. Sanchez would not allow him to enter nor would she allow him to take their daughter home with him. Plaintiff and Sanchez engaged in a lengthy and sometimes heated discussion through the door. Plaintiff accused Sanchez of neglect. Eventually Plaintiff contacted his mother and Sanchez's father, Thomas Sanchez, with the hope that they could intermediate. Sanchez's father arrived at his daughter's home and she allowed him to enter.

Meanwhile, Sanchez called 911. Both Sanchez and her father told Plaintiff that the police had been called. Sanchez also called Defendant Townson. It is not clear if Townson spoke to his son during this phone call or if his son placed a second call to Townson. In any event, Townson's son asked his father to come and get him as soon as possible because someone, later identified as Plaintiff, was attempting to break the front door and attack him. Townson could hear Plaintiff yelling and banging on the door.

Townson knew that 911 had been called, but the situation had not been resolved. He determined he should go over to the home and remove his son from the situation. He called Defendants Ways and Blanding, officers he considers to be among his closest friends, to inform them of the situation and where he was headed. Townson denies telling Ways and Blanding to meet him at Sanchez's home, while

3

both Blanding and Ways claim that Townson asked them to meet him there. In fact, Defendant Blanding claims the three off-duty officers met before they went to the Sanchez residence to develop a plan for the encounter.

The events that unfolded once the Defendants arrived at the Sanchez home is in dispute. Plaintiff maintains that two vehicles arrived at the same time and parked near the house. Plaintiff thought they were possibly police vehicles, but he was not certain because it was dark outside. When he approached the cars, he noticed they were unmarked. Plaintiff maintains that as Townson approached the house, Plaintiff could see a magazine clip sticking out from his pocket. He asked Townson, who he knew was a police officer, why he came armed and with two other individuals. While Townson and Ways were dressed in civilian attire, Blanding was wearing police attire, including pants, shirt and a duty belt. Plaintiff believed that the Defendants intended to corner him in the dark area of the street and jump him.

Plaintiff was fearful and decided to step out into the middle of the street where a street light shone so that neighbors could see that he was not armed. He also removed his shirt and tried to stop an oncoming bus so that neighbors and other travelers on the street could see that he was unarmed in case he was shot by the Defendants. He urged Townson to disarm himself. He told Townson that if he

wanted to fight over the children that he should handle the situation without weapons. Plaintiff saw Townson walk over towards Blanding and it appeared Townson gave his weapon to Blanding. Next, Plaintiff claims that Townson approached, roughed him up and ripped Plaintiff's shirt collar. Blanding and Ways assert that Plaintiff was the aggressor; that he punched Townson in the head. However, Townson denies that Plaintiff tried to hit him.

Ways told Plaintiff to ignore him and Blanding and only focus on Townson. Meanwhile, the Defendants continued to try to surround the Plaintiff. Fearing for his safety, Plaintiff fled on foot. Ways ran after him, but realizing he was unfamiliar with the area and that Plaintiff had not committed a crime he ceased his pursuit. Meanwhile, Townson entered the Sanchez home. Plaintiff reached his vehicle and left the area, however he decided to return in order to obtain the license plate numbers from the vehicles so that he could report the Defendants' conduct to supervision.

As Plaintiff approached the vehicles, Ways suddenly appeared in the middle of the street. Plaintiff saw that Ways was holding his firearm near his groin and Plaintiff believed that Ways was brandishing his firearm so that Plaintiff would stop his vehicle and that he would use it if Plaintiff did not obey him and stop the vehicle. Blanding was on the other side of the street and Plaintiff could see him out

of the corner of his eye. He saw that Blanding was aiming his firearm at Plaintiff's vehicle and began shooting. Plaintiff maneuvered his vehicle around Ways and fled the area as fast as he could, but not before Blanding unleashed at least a dozen bullets at Plaintiff's vehicle, one of which struck Plaintiff in the leg.

The Defendants' version of what transpired at the point Plaintiff returned to the scene is markedly different. Defendants maintain that Plaintiff drove by them aggressively, and tried to run Ways over with his car. Thus, it is Blanding's contention that in order to protect his fellow officer, he had to deploy his department issued firearm.

Plaintiff drove his vehicle as far as he could before it was no longer operational and called his mother to come and pick him up. She took him to St. John Providence Hospital where he was treated for a gunshot wound. While Plaintiff was at the hospital, he received two phone calls from the Detroit Police Department's Internal Affairs. Plaintiff eventually met with an officer with Internal Affairs and answered his questions.

Blanding prepared a crime report, which indicated that Plaintiff had committed aggravated assault on a police officer, aggravated felonious assault and intimidation and stalking. *See* Plf.'s Resp., Ex. G at Pg ID 1167. In his report,

6

Blanding maintains that Plaintiff had a gun and that he drove his car directly at Ways and raised up his firearm as if he was going to shoot at Ways. *Id.* Blanding maintained that he "feared for the life and safety of Officer Ways and was forced to fire my Department issued weapon . . . several time's [sic] at the unknown black male, because I feared that he was going to shoot Officer Ways or run him over with the car." *Id.* Townson also prepared a police report identifying Plaintiff as the suspect in an aggravated felonious assault of a police officer and intimidation and stalking.

Internal Affairs did an investigation, taking statements from Townson and Ways on November 4, 2015, and Blanding on June 14, 2016. Each officer was found to have acted within DPD policy.

### III. LEGAL STANDARD

#### A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light

most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. ACTING UNDER COLOR OF STATE LAW

In addition to the violation of a constitutional right secured by the Constitution and the laws of the United States, a §1983 claim also requires that the alleged deprivation of this right be committed by an individual acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Here, Plaintiff has brought this action pursuant to the Fourth Amendment's prohibition against unreasonable seizures and the use of excessive force. The dispute at issue in the present motion concerns Defendants' contention that they were not acting under color of law during the incident at the Sanchez home. Rather, they maintain their actions were undertaken in a purely private capacity, thus Plaintiff cannot maintain

his § 1983 claim.

As an initial matter, Defendants argue that whether there conduct constitutes action under color of law is purely a question for the Court to resolve. While Defendants asserted this position in their briefing, at the hearing in this matter they conceded that this question may, under certain circumstances, require resolution by the jury when factual questions exist as to the proper characterization of the defendants' actions. *See Chapman v. Higbee Co.,* 319 F.3d 825, 834 (6th Cir. 2003) (noting that "[a]lthough it is possible to determine . . . whether a person acted under color of state law as a matter of law, there may remain in some instances unanswered questions of fact regarding the proper characterization of the actions for the jury to decide.")(quoting *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980)). "The fact that a police officer is on or off duty, or in or out of uniform is not controlling." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975). Even an off-duty police officer's possession and use of a department issued firearm can be indicia of state action. *Id.*

Here, it is undisputed that Blanding carried his police issued firearm to the Sanchez residence and used it, in his own words, to protect a fellow police officer. Moreover, Plaintiff believed that he saw Townson with a firearm, and Ways likewise had a weapon, brandishing it in front of Plaintiff, after he pursued him on

foot, while dressed in police issued attire.

Moreover, Defendants strongly rely on the law holding that to be liable under §1983, their actions must be undertaken pursuant to the power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988); *see also Waters v. Morristown, Tenn.,* 242 F.3d 353, 359 (6th Cir. 2001) (Section 1983 "is generally not implicated unless a state actor's conduct is such that the actor could not have behaved as he did without the authority of this office."). The Court deems Defendants preparation of police reports identifying Plaintiff as a suspect in a felonious assault of a police officer, along with other charges, as actions undertaken pursuant to the power "possessed by virtue of state law and made possible only because the [Defendants were] clothed with the authority of state law." *West*, 487 U.S. at 49.

A person engaged in purely private conduct would not have the authority to prepare such reports under similar circumstances. Defendants have failed to explain why, in August of 2015, they believed Plaintiff committed the crime of felonious assault of a police officer if they were not actually acting as police officers as they now claim nearly two years after the incident giving rise to this action. Additionally, both Blanding and Ways admitted that once an off-duty

officer chooses to intervene, then the officer has engaged in police action and is thereby on-duty. *See* Plf.'s Resp., Ex. I at Pg ID 1217; Ex. D at Pg 1142.

For all of the above reasons, the Court cannot conclude as a matter of law that Defendants were engaged in purely private conduct and not under color of law. Therefore, they are not entitled to summary judgment on Plaintiff's §1983 claim.

### C. STATE LAW CLAIMS

#### 1. ASSAULT AND BATTERY

Defendants argue that Ways and Townson are entitled to summary judgment on Plaintiff's claim of assault and battery. Plaintiff counters that he has provided sufficient evidence to create a triable question of fact as to his assault claim against Defendant Ways. The Court agrees that Plaintiff has established a triable assault claim against Defendant Ways.

An assault requires putting someone in reasonable fear of offensive contact. *See Espinoza v. Thomas*, 189 Mich. App. 110, 472 N.W.2d 16, 21 (1991); *see also* Mich. Civil Jury Instruction 115.01; *Mitchell v. Daly*, 133 Mich. App. 414 (1984) (adopting Restatement of Torts, 2d §§21, 32: "an actor is subject to liability to another for assault if he acts intending to cause a harmful or offensive contact with

the person of the other . . . or an imminent apprehension of such contact, and the other is thereby put in such imminent apprehension.")

Defendants assert that taking "Plaintiff's own testimony, at best, evidences only a veiled threat by Officer Ways to (allegedly) use his firearm, Plaintiff fails to establish an[sic] basis for maintaining his [] claim against Officer Ways." *See* Defs.' Mot. at Pg ID 741. In so arguing, Defendants ignore relevant portions of Plaintiff's deposition testimony.

Plaintiff testified that all three of the Defendants attempted to surround him and lead him to a dark area of the street. Plaintiff believed that Ways and the other Defendants intended to jump him and do him harm which is supported by Plaintiff's actions in stepping into the middle of the street which was illuminated by a street light. Moreover, Plaintiff testified that Ways stepped in front of Plaintiff's car with his gun drawn. Plaintiff believed that Ways was attempting to get him to stop his vehicle and threatening that he would use his firearm if Plaintiff did not stop his car. This evidence is sufficient to create a genuine issue of material fact. *See, e.g., Stanisz v. Fed. Exp. Corp.*, No. 236371, 2003 WL 21660885, at *12 (Mich. Ct. App. Jul. 15, 2003).

As to Townson, he argues that he is entitled to summary judgment based on

the doctrine of consent or mutual combat. A defendant may rely on such a defense when he "was not the aggressor and only used reasonable force for self-defense." *Archer v. Burton*, 91 Mich. App. 57, 59 (1979). Here, there is a material question as to who the first aggressor was during the parties' encounter on August 14, 2015. While Ways and Blanding have asserted that Plaintiff swung at Townson first, Townson has testified that Plaintiff never swung at him. Defendants characterize Plaintiff's comments to Townson to put the gun down as an invitation to fight. However, Defendants must argue this position to the jury because Plaintiff maintains that Townson had a weapon and was attempting to surround the Plaintiff in order to jump him. Plaintiff claims he was so concerned that Townson was going to deploy his weapon that Plaintiff walked to the middle of the street and into oncoming traffic so that witnesses could observe that Plaintiff was not armed and surrounded. Additionally, Plaintiff maintains that when Townson walked past him, Townson ripped Plaintiff's shirt collar.

The material disputed facts must go to the jury as was the case in *Alexander v. Riccinto*, 192 Mich. App. 65, 69 (1991). There, the trial court held as a matter of law that the victim of a police shooting could not sustain a battery claim based on the doctrine of mutual fighting. However, the Michigan Court of Appeals reversed this decision finding that entitlement to such a defense turns on the "facts and

circumstances as they appeared to the party at the time of the incident." *Id*. Thus, the facts must "be determined by the jury," and not the court. *Id.*; *see also Cornell v. Fidler*, 194 Mich. 509, 514 (1916).

For all of these reasons, summary judgment in favor of Defendants Ways on Plaintiff's assault claim and in favor of Townson on Plaintiff's assault and battery claim is inappropriate.

### 2. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The elements of the tort of intentional infliction of emotional distress are: (1) "extreme and outrageous" conduct, (2) intent or recklessness, (3) causation, and (4) "severe emotional distress." *Roberts v. Auto-Owners Ins. Co*., 422 Mich. 594, 602 (Mich. 1985). Defendants Ways and Townson maintain that Plaintiff cannot establish the first element, which depends upon the "context in which the defendant committed them." *Rosenberg v. Rosenberg Bros*., 134 Mich. App. 342, 353 (1984). "The extreme and outrageous character of the conduct may arise from the position of the actor or a relationship to the distressed party." *Ledsinger v. Burmeister*, 114 Mich. App. 12, 19 (1982). "For example, it may occur through an abuse of a relationship which . . . gives a defendant power to affect a plaintiff's interest." *Margita v. Diamond Mortg. Corp.,* 159 Mich. App. 181 (1987); *Warren v. June's*

*Mobile Home Village & Sales, Inc.*, 66 Mich. App. 386, 391 (1976). "[P]olice officials are among those whose position may work to render conduct or remarks extreme and outrageous." *Melson ex rel. Melson v. Botas*, No. 315014, 2014 WL 2867197, at *2 (Mich. Ct. App. Jun. 19, 2014) (citing Restatement of Torts 2d, §46, comment e). "Where reasonable minds may differ, whether a defendant's conduct is so extreme and outrageous as to impose liability is a question for the jury." *Lewis v. LeGrow*, 258 Mich. App. 175, 197 (2003); *Linebaugh v. Sheraton Michigan Corp.*, 198 Mich. App. 335, 343 (1993) (same).

Here again Defendants advance their position by ignoring the totality of the evidence before the Court. When considered in the light most favorable to Plaintiff, the Court cannot conclude that this claim likewise must be determined by the trier of fact. The evidence presented shows that all of the Defendants arrived at Sanchez's house and attempted to surround Plaintiff with the apparent intention to jump him. Defendant Townson flashed his holster, and ripped Plaintiff's shirt. Ways ran after Plaintiff even though he had broken no laws and brandished his firearm with the intention of intimidating the Plaintiff. When their colleague, Defendant Blanding, deployed at least a dozen bullets at Plaintiff's vehicle while he was inside, Ways and Townson failed to call 911 to summon medical assistance. Moreover, after the incident both Ways and Townson filled out police reports

claiming that Plaintiff's actions amounted to felonious assault of a police officer and other crimes, even though they knew there was no basis in fact for such assertions. Rather, they were clearly trying to cover for Blanding's conduct in deploying his department issued firearm. On these facts, the Court cannot hold as a matter of law that no reasonable jury could conclude these officers engaged in extreme and outrageous conduct. Their motion for summary judgment on this claim is likewise denied.

## IV. Discussion

Accordingly, Defendants' Motion for Partial Summary Judgment [#46] is DENIED.

SO ORDERED.

| | |
|---|---|
| Dated: June 5, 2018 | /s/Gershwin A. Drain<br>GERSHWIN A. DRAIN<br>United States District Judge |

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 5, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk