UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMAR PARKER,

        Plaintiff,

v.

Case No.: 16-cv-13036
Honorable Gershwin A. Drain

CITY OF DETROIT, *et al.*,

        Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' RENEWED MOTION FOR SUMMARYJUDGMENT [#81]

### I.    INTRODUCTION

On August 22, 2016, Plaintiff Demar Parker filed the instant 42 U.S.C. § 1983 action against Defendants, Police Officers Jerold Blanding, Christopher Townson and Marcus Ways, as well as the City of Detroit for violations of his Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and excessive force. Plaintiff also brought claims of assault and battery and intentional infliction of emotional distress against the Defendant-Officers.

Presently before the Court is the Defendants' Renewed Motion for Summary Judgment, filed on June 8, 2018. Plaintiff filed a Response in Opposition on July 3, 2018, and Defendants filed a Reply Brief on July 18, 2018. For the reasons that

follow, the Court will deny the Defendants' Renewed Motion for Summary Judgment.

## II. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The facts giving rise to the instant action have been set forth in prior orders of this Court. As such, the Court hereby adopts the factual recitation of the facts discussed in its June 5, 2018 decision denying the Defendants' initial Motion for Summary Judgment. *See* Dkt. No. 78 at Pg ID 1424-1429.

On October 26, 2016, in lieu of an Answer, Defendants' first responsive pleading was an Amended Motion to Dismiss Plaintiff's Complaint.[1] In that motion, the individual Defendants argued that they were entitled to dismissal of Plaintiff's § 1983 claim because they were not acting under color of state law, a requirement for § 1983 liability, rather their actions were undertaken in a purely private capacity. On May 30, 2017, the Court denied the Defendants' Amended Motion to Dismiss and allowed Plaintiff to file an Amended Complaint. The Court also entered a Scheduling Order setting a discovery deadline of November 15, 2017, and a dispositive motion cut-off of December 6, 2017. Defendants filed their Answers to the Amended Complaint on June 20, 2017. In their Answers, the

---

[1] The Court struck Defendants' original Motion to Dismiss for failure to comply with this Court's local court rules.

Defendants raised governmental immunity, however they failed to expressly raise qualified immunity as to Plaintiff's § 1983 claim. *See* Dkt. Nos. 34-36.

On August 16, 2017, Defendants filed a Motion for Summary Judgment and reasserted that Plaintiff's § 1983 claim failed on the merits because the Defendants were not acting under color of state law, rather their acts were undertaken in a purely private capacity and not as police officers during the incident giving rise to Plaintiffs' claims. The Court denied Defendants' August 16, 2017 Motion for Summary Judgment, concluding that there remained unanswered questions of fact concerning whether their actions can properly be characterized as actions under color of law. *See Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003); *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975).[2]

Two days after the Court entered its Order Denying Defendants' Motion for Summary Judgment; Defendants filed a Request for Leave to file their present Renewed Motion for Summary Judgment. The Court granted their Request and Defendants filed their present motion on June 8, 2018. In their Renewed Motion for Summary Judgment, Defendants have altered their previous position that they

---

[2] Defendants incorrectly argue in their Renewed Motion for Summary Judgment that the Court definitively determined that the "Defendants to this action were acting under color of state law." *See* Dkt. No. 81-2 at Pg ID 1461. Contrary to Defendants' assertion, the Court held that whether the Defendants were acting under color of law remains a jury question. *See* Dkt. No. 78 at Pg ID 1433 ("[T]he Court cannot conclude as a matter of law that Defendants were engaged in purely private conduct and not under color of law.")

3

were not acting under color of state law, and now assert that as state actors, they are entitled to qualified immunity.

### III. LAW & ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

B. **Qualified Immunity**

1. **Defendants Waived the Defense of Qualified Immunity during the Summary Judgment Stage of the Instant Action**

Plaintiff first argues that Defendants have waived their right to rely on the doctrine of qualified immunity because they failed to raise it earlier in the instant proceeding.

As an initial matter, the Court notes that Defendants assert they raised this defense in their Affirmative Defenses. However, the Court has reviewed their Affirmative Defenses, and while they expressly invoke governmental immunity as a defense to Plaintiff's state law claims, they do not expressly invoke qualified immunity as to Plaintiff's § 1983 claims. Moreover, Defendants failed to raise the defense of qualified immunity in their Amended Motion to Dismiss or in their original Motion for Summary Judgment. Rather, Defendants were steadfast in their position that they were not acting under color of state law and thus qualified immunity was irrelevant to this action.

Moreover, the Court rejects the litigation strategy undertaken here as unsound. Defendants argue that they filed their initial Motion for Summary Judgment well before the close of discovery and dispositive motion cutoff so they could raise qualified immunity in a second Motion for Summary Judgment if their first Motion for Summary Judgment was denied. This district abhors such strategic

maneuvers because it leads to inefficient and lengthy resolution of cases. In fact, this district does not permit parties to file piecemeal summary judgment arguments without leave of court. *See* E.D. Mich. L.R. 7.1(b)(2) (requiring a party to "obtain leave of court to file more than one motion for summary judgment."). The Court advises counsel to raise all of his arguments in support of summary judgment in a single motion in future cases in this district.

      The Sixth Circuit Court of Appeals recognizes that the defense of qualified immunity may be raised at various points in the progression of litigation. *See English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994). However, this Court has the discretion to find a waiver "if a defendant fails to assert the defense within time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." *Id*. "Such a waiver, however, need not waive the defense for all purposes but would generally only waive the defense for the stage at which the defense should have been asserted." *Id.*

      Accordingly, pursuant to Sixth Circuit authority, the Court finds that Defendants have waived their affirmative defense of qualified immunity at the summary judgment stage of the instant action and they may not use this defense as a basis for interlocutory appeal.

## 2. Material Factual Questions Preclude a Qualified Immunity Determination

Plaintiff also argues that Defendants are not entitled to qualified immunity because there are material questions of fact in this dispute which precludes determining whether Defendants are entitled to qualified immunity. The Court agrees.

Just as this Court found in its Order denying Defendants' first Motion for Summary Judgment, the parties' materially disputed facts preclude the Court from resolving whether they are entitled to qualified immunity. *See Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994) (finding that summary judgment based on qualified immunity is improper if the facts on which the decision must be based are in dispute). It is well settled that summary judgment based on qualified immunity may not be granted when "[t]he legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Id*.; *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988); *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994); *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000).

The Court has already set forth the disputed material facts in its prior Order denying Defendants' first Motion for Summary Judgment, *see* Dkt. No. 78 at Pg ID 1426-1429, 1434-35, 1437 (noting that "[t]he events that unfolded once the Defendants arrived at the Sanchez home is in dispute[,] and [t]he Defendants'

version of what transpired at the point Plaintiff returned to the scene is markedly different." Additionally, "Defendants ignore relevant portions of Plaintiff's deposition testimony[,]" and "the[se] material[ly] disputed facts must go to the jury." Lastly, "[h]ere again Defendants advance their position by ignoring the totality of the evidence before the Court." ) In their Renewed Motion for Summary Judgment, Defendants again advance their theory by ignoring all of the evidence presented by Plaintiff. As such, they once again fail to appreciate that the Court must analyze their Motion in the light most favorable to the Plaintiff. Because the determination of whether Defendants are entitled to qualified immunity turns on which version of the facts is accepted, it would be error for this Court to grant qualified immunity.

### 3. Interlocutory Appeal is Unavailable

As previously discussed, Defendants may not take an interlocutory appeal based on this Court's denial of qualified immunity because they waived this defense during the summary judgment stage of this action.

Moreover, even if they had not waived qualified immunity during the summary judgment stage, because the Court also concludes that material questions of fact preclude finding as a matter of law that they are entitled to qualified immunity, an interlocutory appeal is also inappropriate for this separate reason. "[O]fficials may immediately appeal an adverse ruling on their defense of qualified

immunity; however, they may only do so if the appeal presents a neat abstract [issue] of law rather than the question of whether the record demonstrates a genuine issue of fact for trial." *Hoover v. Radabaugh*, 307 F.3d 460, 465 (2007) (dismissing appeal and holding that "we do not have jurisdiction . . . [b]ecause the determination of the district court was factual and did not raise significant legal questions[.]")

Based on these reasons, the Court warns Defendants that should they file an interlocutory appeal in this matter; a stay of these proceedings will likely be denied because such an appeal would be frivolous. *See Behrens v. Pelletier*, 516 U.S. 299, 310 (1996) (recognizing a district court's power to certify interlocutory appeals as frivolous and proceed with the case), *Yates v. City of Cleveland*, 941 F.2d 444, 449 (6th Cir. 1991); *Jennings v. Genesee County*, No. 13-13308, 2015 U.S. Dist. LEXIS 118096, *1 (E.D. Mich. Sept. 4, 2015); *Englar v Davis*, No. 04-cv-73977, 2011 U.S. Dist. LEXIS 77033, *13-14 (E.D. Mich. Jul. 15, 2011).

### B. Municipal Liability

Defendants also argue that the City of Detroit is entitled to summary judgment because Plaintiff cannot "proffer a single micro-dot of admissible evidence that any City of Detroit policy, custom, or procedure, was the moving force behind the alleged constitutionally aberrant conduct." *See* Renewed Mot.

Summ. J. at Pg ID 1480. To the contrary, Plaintiff has come forward with sufficient evidence demonstrating that whether the City is liable under a *Monell* theory is for the jury's determination. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). It is telling that the Defendants fail to address the evidence and arguments raised in Plaintiff's Responsive Brief.

In *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), the United States Supreme Court established that "inadequacy of police training may serve as the basis for § 1983 liability . . . where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." In support of his *Monell* claim, Plaintiff first directs the Court to the Department's history with respect to allegations of excessive force. For instance, Defendant Jerold Blanding has been a repeat offender. He has been sued repeatedly in this Court for claims of excessive force. *See* case numbers 98-73711, 99-60276. The City settled the first action.

As a result of the numerous shootings of unarmed African American men during this time period, then Mayor Dennis Archer requested that the Department of Justice investigate the operations of the Department. This investigation revealed that a high percentage of shootings were not legally justified because there was no imminent threat of harm, or were shootings at persons who were only suspected of committing misdemeanors. *See* Plf.'s Resp. at Ex. E. Twenty percent of the

shootings deemed to be justified were found to be avoidable had the officers not unnecessarily placed themselves in dangerous situations, or fired shots without first establishing a target. *Id*. Ultimately the DOJ filed suit alleging a pattern or practice of excessive force due to a failure to adequately train, supervise and monitor police officers, to investigate use of force incidents and discipline officers. *Id*. at Ex. AA. In that case, the parties entered a consent decree and monitors were put in place to enforce the decree, however by 2014, federal monitors concluded that the Department was not sustainably compliant with respect to constitutional standards of excessive force, as well as found that training on de-escalation to avoid unnecessary confrontations with citizens was needed. *Id.* at Ex. H. The monitors also concluded that the Department was not compliant with standards agreed to in the decree regarding investigating and disciplining for the misuse of force. *Id*. However, the DOJ recommended releasing the City when it was in bankruptcy, concluding that it was mostly compliant. *Id.* at Ex. E.

Plaintiff has also presented evidence that the City is apparently not endeavoring to rectify its deficiencies with respect to training. Defendant Marcus Ways testified during his deposition that he cannot explain how he has been trained on the use of force. *Id*. at Ex. C. Nor could Defendant Christopher Townson recall any training on when or how to use force while on-duty versus while off-duty. *Id.* at Ex. B. Moreover, the Department's Rule 30(b)(6) witness indicated that he is

unaware of any training at all on de-escalation, nor could he identify any updates in training over the past fifteen years. *Id.* at Ex. I. He is unaware of anyone ever being referred for use of force training because of concerns with the misuse of force. *Id.* While the Department uses a computer program to track use of force, he likewise could not identify any case of someone sent to training under this system. *Id.* Further, citizen complaints are not addressed during officer evaluations. *Id.*

Plaintiff has also brought forth evidence that the Department does not adequately investigate claims of excessive force or provide additional training to officers who have had repeated incidents involving misuse of force. For example, the investigation into the circumstances giving rise to this action took an inordinate amount of time, nearly three months for the interviews of Defendants Ways and Townson, and roughly ten months for Defendant Blanding. The Defendants' interviews were short and inconsistencies between the officers' versions of the incident were not followed up with further questioning. Moreover, Defendant Blanding's history including dozens of citizen complaints and two lawsuits alleging excessive force is absent from the Department's computer system that supposedly tracks these incidents. Thus, his history was not uncovered and the investigator was unaware of a repeated pattern and potential need for training on the use of force. Lastly, none of the officers were disciplined or referred for

further training despite the fact that Plaintiff's vehicle was shot at a dozen times, with one bullet entering his leg during the subject incident.

All of this evidence shows that a reasonable trier of fact could conclude that the Department's failure to train these Defendants and apparent ratification of the Defendants' conduct amounts to deliberate indifference to the constitutional rights of Plaintiff and other citizens to be free from the excessive use of force.

### C. Governmental Immunity

Lastly, Defendants argue that they are entitled to governmental immunity on Plaintiff's state law claims. While Defendants raised governmental immunity as an affirmative defense, they failed to argue it during their initial Motion for Summary Judgment.

In order to obtain governmental immunity, Defendants must establish that (1) the complained of acts were undertaken during the course of Defendants' employment and within the scope of their authority, (2) the acts were in good faith, and (3) the acts were discretionary, as opposed to ministerial. *Ross v. Consumers Power Co.*, 420 Mich. 567 (1984). Whether a defendant "acted in the course of his employment and within the scope of his authority . . . are [generally] questions of fact. Where reasonable minds could differ, these questions should be left to the jury." *Gillam v. Lloyd*, 172 Mich. App. 563, 577 (1988).

Similar to this Court's conclusion with respect to qualified immunity, the Court finds that Defendants have waived this argument during this stage of the proceeding.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Defendants' Renewed Motion for Summary Judgment [#81] is DENIED.

Motions *in Limine* are due no later than October 5, 2018. Responses are due no later than October 22, 2018. Reply briefs may be filed no later than October 30, 2018. All remaining dates in this Court's June 14, 2018 Order (Dkt. No. 83) remain unchanged.

SO ORDERED.

Dated: September 4, 2018  /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 4, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk